**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFREY SCOTT BAREA,**

              **Plaintiff,**

      **v.**                                                              **1:05-CV-1523**
                                                                      **(GLS/DRH)**
**STATE UNIVERSITY OF NEW YORK**
**AT ALBANY,**

              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Jeffrey Scott Barea
Plaintiff *Pro Se*
3400 Joyce Lane #236
Denton, Texas 76207

**FOR THE DEFENDANT:**

HON. ELIOT SPITZER                     GERALD J. ROCK
Attorney General, State of New York    Assistant Attorney General
The Capitol
Albany, New York 12224

**Gary L. Sharpe**
**U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Pending under Federal Rules of Civil Procedure 12(b)(1) and (6) is a motion to dismiss by defendant, State University of New York at Albany (SUNY). Jeffrey Scott Barea alleges that SUNY violated his Fifth and Fourteenth Amendment rights by discriminating against him on the basis of his age.[1] For the reasons that follow, SUNY's motion is **GRANTED**.

## II. Procedural History

On December 5, 2005, Barea filed his complaint pursuant to 42 U.S.C. §§ 1983 and 1988. *See Dkt. No. 1*. Also on that day, Barea moved for a temporary restraining order against SUNY. *See Dkt. No. 3*. On December 22, the court denied Barea's motion for preliminary injunctive relief. *See Dkt. No. 5.* On March 21, 2006, SUNY moved to dismiss Barea's complaint. *See Dkt. No. 11*. Despite the passage of the due date, Barea failed to file a response to SUNY's motion. On April 27, the court ordered Barea to either notify the court and opposing counsel of his

---

[1] It is unclear whether Barea seeks to assert his causes of action pursuant to 42 U.S.C. § 1983, or whether Barea wishes to bring independent claims against SUNY under the Age Discrimination Act. In the court's analysis, it considers both possibilities. Therefore, in the interest of justice, and considering that Barea is a *pro se* plaintiff, the court will liberally construe his complaint to allege the following five causes of action, all brought within the purview of 42 U.S.C. § 1983 or the Age Discrimination Act: (1) age discrimination in violation of the Age Discrimination Act of 1975 and Article 5 of the New York State Constitution; (2) breach of contract in violation of Barea's Fifth and Fourteenth Amendment rights; (3) age discrimination in violation of Barea's Fifth Amendment due process rights; and (4) age discrimination in violation of Barea's due process rights pursuant to Article 5 of the New York State Constitution. *See Compl., Dkt. No. 1*.

intention not to respond to SUNY's motion or to file his elective response within fourteen days.  *See Dkt. No. 17.*  On May 23, Barea filed a response to the instant motion, and on May 30, SUNY replied.  *See Dkt. Nos. 19, 20.*

### III.  Facts

Barea applied to SUNY and was accepted for matriculation in 2002.  *See Pl. Compl., Dkt. No. 1*.  Before the Fall 2002 semester, he applied for residential life housing.  *See id.*  He attended school at SUNY from Fall 2002 to Spring 2004, during which time he was consistently a student in good standing.  *See id.*  Barea and SUNY entered into a residential life contract, which governed residential life at SUNY and required students to abide by the Community Rights and Responsibilities contract (CRR).[2]  Pursuant to the contract, his residential fees were automatically deducted

---

[2]SUNY requires that all students sign the Community Rights and Responsibilities contract (CRR) in order to matriculate.  *See Dkt. No. 1.*  CRR-7.04 states:

> "[e]quality is a necessary part of any university that claims to be a democratic institution.  Distinctions between individuals, based on irrelevant differences are ruled out."

*Id.*  Section III of CRR-7.04 states:

> "[a]ll rules of the Board of Trustees of SUNY, and all the Local, State and Federal Laws apply on campus.  The State of New York laws include, but are not limited to, the New York State Penal Law, the New York State Vehicle and Traffic Law, the New York State Education Law[.]..."

*Id*.

3

from his federal financial aid award. *See id.*

On August 8, 2002, Barea was assigned to a first-floor room in a SUNY dormitory. *See id.* On August 21, residential life staff changed Barea's room assignment to a second-floor room at the back of the building. *See id.* Barea contacted the Department of Residential Life and was informed by Kim Naba that the change was made solely due to his age. *See id.* Barea subsequently spoke to Lauri Garafola, Director of Residential Life, who stated, "[i]t is not appropriate for a 35 year old to live with a 19 year old." *See id.* She also stated, "[y]ou were moved from an area of 19 year olds to a more age appropriate area." *See id.*

On August 28, Barea filed a written complaint with Carl Martin, Associate Director of Student Affairs. *See id.* Martin suggested that Barea file an official complaint with the Director of Affirmative Action, and that office referred Barea to the Student Affairs Director, John Murphy. *See id.* Barea filed a complaint with Diane Forsber, Director of SUNY System Administration. *See id.* On September 30, 2002, he filed complaints with the U.S. Department of Education's Office of Civil Rights, and the New York State Division of Human Rights. *See id.* The New York State Division of Human Rights suggested that Barea first follow up on the complaint filed

4

with the United States Department of Education (USDOE).³  *See id.*

On February 12, 2003, the USDOE Office of Civil Rights initiated an investigation into Barea's allegations of age discrimination.  *See id.*  The investigation revealed "that the University did consider age as a factor in its room assignment decisions."  *See id.*  SUNY agreed to implement a resolution agreement, and the USDOE Office of Civil Rights agreed to monitor SUNY's implementation of the agreement.⁴  *See id.*

Barea also filed formal complaints and supporting documentation regarding the hostile living environment to which he was subjected.  *See id.*  He claims to have been ridiculed and verbally demeaned by University staff.  *See id.*  He also claims that personal information including his social security number was released to unauthorized people.  *See id.*  Barea's roommate assaulted him for three days even after Barea filed a complaint with the Residential Life staff.  *See id.*  Residential Life officials entered

---

³The U.S. Department of Education Office of Civil Rights assigned case number 02-03-2022 to Barea's file.  *See Pl. Compl., Dkt. No. 1.*

⁴The resolution agreement provides in part, "[t]he University's Residential Life Department...will assign all students to rooms and roommates in compliance with the Age Discrimination Act.  Specifically, Residential Life staff making room assignments will consider residency preferences based on factors other than the student's age, except as permitted under the Act."  *See id.*

5

Barea's dorm room "as a method of harassment."[5]  *See id.*

In Fall 2003, Barea suffered from depression and consequently withdrew from SUNY.  *See id.*  The following summer, he notified SUNY of his intent to return.  *See id.*  SUNY thereafter instructed the New York State Attorney General's office to file suit against Barea for recovery of unpaid residential charges.  *See id.*

SUNY's policy states that tuition must be paid prior to any non-tuition charges.  *See id.*  Failure to pay tuition fees allows the University to drop the in-debt student from all registered classes.  *See id.*  On April 29, 2004, SUNY reclassified Barea's residential charges as tuition charges still due.  *See id.*  In addition, it allocated portions of Barea's federal financial aid to his tuition costs.  *See id.*  After tuition was fully paid, SUNY applied the balance of Barea's financial aid award to residential charges.  *See id.*  Barea was not dropped from classes due to his failure to pay tuition.  *See id.*

On March 21, 2005, Barea notified SUNY of his intent to sue.  *See id.*  He subsequently faxed a copy of this notice to the New York State Court

---

[5]Residence Life, University Police, and SUNY officials failed to respond when an uncontrolled bonfire was sited at the student newspaper near the Student Union.  *See id.*  They also refused to intervene when Barea's student newspaper project was the victim of theft.  *See id.*

6

of Claims.  *See id.*

## IV.  Discussion

### A.  Motion to Dismiss Standard

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In other words, the court should dismiss the complaint pursuant to Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief."  *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005) (internal quotation marks and citation omitted).  "A court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted).  Therefore, in reviewing a motion to dismiss, a court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor."  *Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted).

### B.  SUNY's Motion to Dismiss

7

As stated, Barea claims that SUNY violated his constitutional rights by discriminating against him on the basis of his age.  SUNY maintains that the complaint fails to state a cause of action against it.  More specifically, SUNY argues the following: (1) that Barea's claims are barred by the Eleventh Amendment; (2) that Barea's section 1983 claims are untimely; (3) that the complaint fails to state a cause of action under the Fifth Amendment; (4) that there is no private right of action for damages under the Age Discrimination Act of 1975; and (5) that Barea failed to comply with statutory notice requirements prior to commencing suit under the Age Discrimination Act.

### 1.     Eleventh Amendment Sovereign Immunity

SUNY argues that it is an "arm of the State" and is therefore entitled to Eleventh Amendment immunity from liability.  Barea maintains that SUNY has either waived its Eleventh Amendment immunity or, in the alternative, is not protected by the Eleventh Amendment.  Moreover, Barea argues that the specific relief he is requesting, namely, reinstatement as a matriculating student in good standing, is not entitled to Eleventh Amendment immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the

8

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  "Although by its terms the Amendment applies only to suits against a State by citizens of another State,...the Amendment's applicability [has been extended] to suits by citizens against their own States." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citations omitted)*.*  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Id.*

"Such immunity extends to agencies and departments acting on behalf of the State and applies regardless of the nature of the relief sought." *Sandoval v. DMV*, 333 F. Supp. 2d 40, 42 (E.D.N.Y. 2004) (citation omitted).  "For Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued, the State is the real party." *Garcia v. State Univ. of N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (quoting *Dube v. State of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990))*.*

There are, however, two exceptions to this rule.  "First, a State may

9

waive its immunity by consenting to suit." *Sandoval*, 333 F. Supp. 2d at 43. "Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to its enforcement powers under Section 5 of the Fourteenth Amendment." *Id.* (citation omitted).

Here, SUNY has clearly not consented to suit in a federal forum. Moreover, Congress has not abrogated sovereign immunity for claims such as those asserted here against SUNY, a state actor.[6] Thus, no relief, either legal or equitable, is available against SUNY. Accordingly, Barea's § 1983 claims and those claims he may seek to assert under the ADA against SUNY are **DISMISSED**.

### 2. Timeliness of Barea's § 1983 Claims

SUNY also argues that Barea failed to commence his § 1983 claims

---

[6] Barea argues that SUNY has waived its Eleventh Amendment protection because it accepts federal financial assistance in the form of Pell Grants and other federal loans. As SUNY properly points out in its response, the one case cited by Barea in support of this proposition is inapposite to the instant case. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005). *Bennett-Nelson* held that Title II of the Americans with Disabilities Act of 1990 and section 504 of the Rehabilitation Act of 1973 properly provided for waiver of state sovereign immunity conditioned upon the state's receipt of federal funds. *See id.* Consistent with this holding, the United States Supreme Court recently held that, "insofar as Title II [of the Americans with Disabilities Act] creates a private cause of action for damages against the State for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *U.S. v. Ga.*, 126 S. Ct. 877, 882 (2005) (emphasis in original). Barea initiated the instant case pursuant to 42 U.S.C. § 1983 and/or the Age Discrimination Act, and none of his causes of action are grounded in the Americans with Disabilities Act. Therefore, the waiver argument does not apply to the instant case. Accordingly, this argument lacks merit, and SUNY may exercise its Eleventh Amendment immunity.

within the appropriate three-year statute of limitations (SOL).  Barea maintains that his claims brought pursuant to this section are timely because they did not accrue until he received a right to sue letter from the DOE.

"For § 1983 actions arising in New York, the statute of limitations is three years."  *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994).  Federal law governs the date of accrual for a § 1983 cause of action.  *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980).  This date is determined by "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Id*.  There is no requirement that a plaintiff suing under § 1983 first obtain a right to sue letter from the DOE.

Construing the facts in the light most favorable to Barea and accepting all of his allegations as true, as the court must on a motion to dismiss, the discriminatory conduct asserted in the complaint took place in August 2002.  The main allegations of misconduct, namely, the change in Barea's room assignment and the harassment, took place on August 21, 2002.  Barea filed his complaint on December 5, 2005, more than three years after the accrual of his claim.  Accordingly, Barea's § 1983 claims are untimely and are therefore **DISMISSED.**

11

### 3.     Failure to State a Claim Under the Fifth Amendment

SUNY argues that any claim under the Due Process Clause of the Fifth Amendment fails because it applies only to federal, not state, actors. Barea argues in a conclusory fashion that because SUNY is a state actor, it must also be construed as a federal actor.  He cites no relevant case law.

"[T]he Fifth Amendment 'governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors.'"  *Snow v. Vill. of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (quoting *Brock v. N.C.*, 344 U.S. 424, 426 (1953)).  Barea named no federal actors as defendants in this action. Accordingly, all claims premised on violations of Barea's Fifth Amendment Due Process rights are **DISMISSED**.

### 4.     Age Discrimination Act of 1990

As an initial matter, it is unclear whether Barea seeks to assert an independent cause of action under the ADA, or if he seeks only to assert a claim for violation of that Act pursuant to § 1983.  SUNY argues that, to the extent Barea seeks to pursue independent ADA claims, he is barred from doing so.  More specifically, SUNY argues: (1) that there is no private cause of action under the ADA and (2) that, even if there is, Barea is

12

barred from bringing suit because he failed to exhaust his administrative remedies.

### a.     Private Suit

SUNY argues that the ADA does not bestow upon individuals a private right of action for monetary damages. Barea contends that it does. Northern District of New York Judge McCurn has held that the ADA does provide for a private cause of action. *See Hilow v. Rome City Sch. Dist.*, 91-cv-567, 1994 WL 328625, at *4 (N.D.N.Y. June 29, 1994).[7]

---

[7] 42 U.S.C. § 6102 provides, "...no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.

In 2001, the Middle District of Pennsylvania held that no private right of action exists under the ADA. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 383 (M.D. Pa. 2001). The *Tyrell* court explained that "[n]othing in the language or legislative history of the ADA either expressly creates or expressly precludes a private right to seek damages for violation of the Act" and noted that the proper question was "whether such right should be inferred." *Id*. In considering the statutory construction and legislative intent of the ADA, The *Tyrrell* court noted that "[w]hile section 6104(e) does allow an 'interested person' to seek an injunction of the discriminatory practice in federal district court, this remedy is available only after the plaintiff's administrative remedies have been exhausted.'" *Id.* (citing 42 U.S.C. § 6104(f)). "No mention is made of a right to bring a damages action, although attorney's fees are expressly allowed to plaintiffs who prevail in a suit for injunctive relief." *Id.* (citing 42 U.S.C. § 6104(e)(2)). Moreover,

> [i]n the context of this detailed remedial scheme, in which Congress has expressly provided for administrative remedies as well as a private right to seek injunctive relief, Congress' failure to mention a private right to seek damages weighs heavily against the judicial implication of such a remedy." In other words, "[i]f Congress had wished to allow such a plaintiff to recover damages as well, it certainly knew how to authorize it.

*Id.*

In contrast, Judge McCurn has held that the ADA does provide for a private cause of action. *See Hilow v. Rome City Sch. Dist.*, 91-cv-567, 1994 WL 328625, at *4 (N.D.N.Y. June 29, 1994). He explained that "there is no apparent reason why Congress would preclude the private enforcement of the ADA when private actions are filed to enforce the Rehabilitation Act." *Id.* at *4. In further support of this finding, Judge McCurn reasoned that,

13

At this juncture, it is unnecessary for the court to consider the merits of SUNY's argument because it will dismiss Barea's ADA claims on other grounds.  Therefore, even if Barea may proceed as an individual under the ADA, his claims still fail because he has not exhausted his administrative remedies.  Accordingly, Barea's ADA claims against SUNY are **DISMISSED**.

### b.   Administrative Exhaustion

SUNY argues alternatively that Barea has failed to comply with the statutory notice requirements pursuant to 42 U.S.C. § 6104(e)(1) prior to commencing this action.  Barea maintains that he has complied with the statutory notice requirements in notifying various SUNY administrators and personnel of his intention to sue more than six months prior to filing his complaint.

42 U.S.C. § 6104(e)(1) requires, as a prerequisite to suit, that notice of the action be given thirty days prior to commencing suit to "the Secretary

---

> [t]he statute itself provides in its enforcement section that 'any interested person' may bring an action to enjoin a violation of the ADA[,]...[and] the general regulations provide for procedural steps to be exhausted before a complainant may bring suit against a receipt of funds....These provisions would be unnecessary were there no private cause of action.

*Id.* (citing 42 U.S.C. § 6104(e)(1)).

14

of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed." 42 U.S.C. § 6104(e)(1). This notice must set forth the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney's fees will be demanded. *See* 42 U.S.C. § 6104(e)(2).

Although Barea cites a long list of persons to whom he allegedly provided notice, he has failed to adequately plead these facts and provide supporting documentation to the court. Moreover, Barea has failed to allege that he properly notified the Secretary of Health and Human Services and the Attorney General of the United States pursuant to 42 U.S.C. § 6104(e)(1), (2). Barea failed to comply with the statutory prerequisites to commencing suit under the ADA. Accordingly, SUNY's motion to dismiss is **GRANTED** and Barea's claims against SUNY premised on ADA violations are **DISMISSED**.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that SUNY's motion to dismiss is **GRANTED**, and it is further

**ORDERED** that Barea's entire complaint is **DISMISSED**, and it is further

15

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

July 10, 2006
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge